Bradford KLEIN, Plaintiff

v.

AIG TRADING GROUP INC. & AIG Financial Products Corp., Defendants

No. 3:02CV2122 C FD TPS.

United States District Court, D. Connecticut.

June 7, 2005.

Joseph D. Garrison, Garrison Levin–Epstein Chimes & Richardson, New Haven, CT, for Plaintiff.

Christopher T. Wethje, David A. Kulle, Stephen W. Aronson, Robinson & Cole, Hartford, CT, Theodore O. Rogers, Jr., Brent J. McIntosh, Sullivan & Cromwell, New York City, for Defendants.

### RULING ON PLAINTIFF'S MOTION TO COMPEL (Dkt.# 37)

SMITH, United States Magistrate Judge.

The plaintiff, Bradford Klein ("Klein"), commenced this action against the defendants, AIG Trading Group Inc. ("AIGTG") and AIG Financial Products Corp. ("AIGFP"), (collectively, "AIG"), for an alleged "breach of a compensation agreement, failure to pay wages, wrongful discharge in violation of public policy, tortious interference and other equitable claims." (Pl.'s Mem. Supp. Mot., 2/7/05, at 1). Pending before the court is the plaintiff's Motion to Compel. (Dkt.# 37). As explained below, the plaintiff's motion is **GRANTED**.

### *Facts*

A brief summary of the relevant facts are as follows. Klein was a senior executive at AIGTP. (Pl.'s Mem. Supp. Mot., 2/7/05, at 2). Klein and AIGTP allegedly entered into a new employment contract whereby "his salary would remain the same and his participation in bonus pools would be set at 25% for the commodities business (a 13.6% increase over his previous commodities bonus pool percentage) and 15% for the asset management business." (*Id.*). In addition, the parties allegedly agreed, "consistent with prior practice at AIGTP, that the bonus would be based upon revenues generated from transactions, investments, *reserves* and all other revenue sources generated by the commodity and asset management business minus agreed allocated and direct costs." (*Id.* (emphasis in original)). Specifically, paragraph 3 of the agreement stated:

> If your employment is terminated by AIG [AIGTG] other than for cause you shall continue to be entitled to your salary until the end of calendar year 2003 and a bonus based on the calculation referred to above at the time of your termination, plus any outstanding reserves held against past and current Commodity Business transactions at the time of termination, provided that AIG [AIGTG] may pay the bonus associated with reserves only when those reserves are realized in accordance with AIG's [AIGTG's] normal policies.

(Pl.'s Mem. Supp. Mot., 2/7/05, at 3).

Soon thereafter, upon the announcement of a merger between AIGTG and AIGFP, issues arose surrounding the contract. Specifically, the plaintiff alleges, John Finigan, CEO of AIGTG, asserted that he had not agreed to the aforementioned provision. (*Id.* at 4). After the termination of his employment, Klein filed this suit.

At issue in the present motion are eight discovery requests. The requests and responses are as follows.

***Document Request No. 2:*** Spreadsheets prepared by Rob Feilbogen, Brian Morri-

sey and/or Ron Latz referring to reserves or deferred compensation, and/or payment of such items.

***Response # 2:*** In addition to the General Objections, Defendants object to the use of the term "reserves" in Request No. 2 on the grounds that it is impermissibly vague and not defined. Defendants further object to this Request on the grounds that it is overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 2. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

***Document Request No. 5:*** All spreadsheets reflecting or concerning all reserves, kept on a daily, weekly, monthly, quarterly or annual basis, during the years 2001, 2002 and 2003, for AIG, AIGTP, and AIGFP.

***Response # 5:*** In addition to the General Objections, Defendants object to the use of the term "reserves" in Request No. 5 on the grounds that it is impermissibly vague and not defined. Defendants further object to this Request on the grounds that it is overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Request to the extent it requires the production of documents that are commercially sensitive and, in this regard, Defendants note that Plaintiff has testified in his deposition that he currently is employed as an executive of a company that is a competitor of Defendants.

Additionally, Defendant's object to the production of documents that pertain to non-party AIG.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 5. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

***Document Request No. 8:*** All documents reflecting, concerning or relating to any discretionary reserve account in 2002 and 2003, by month, quarter and year end, for AIGTG, AIGFP and AIG

***Response # 8:*** In addition to the General Objections, Defendants object to the use of the term "discretionary reserve account" in Request No. 8 on the grounds that it is impermissibly vague and not defined. Defendants further object to this Request on the grounds that it is overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendants also objects to this Request to the extent it requires the production of documents to non-party AIG.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 8. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

***Document Request No. 9:*** All documents reflecting, concerning or relating to reserving profit and loss in 2002 and 2003, in AIGTG, AIGFP and AIG.

***Request # 9:*** In addition to the General Objections, Defendants object to Request No. 9 on the grounds that it is impermissibly vague, overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Request to the extent it requires the production of documents that are commercially sensitive and, in

this regard, Defendants note that Plaintiff has testified in his deposition that he currently is employed as an executive of a company that is a competitor of Defendants. Defendant also objects to this Request to the extent it requires the production of documents to non-party AIG.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 9. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

***Document Request No. 11:*** All documents reflecting AIGTG transactions in which credit reserves were booked, between 2000 and present.

***Response # 11:*** In addition to the General Objections, Defendants object to the use of the term "credit reserves" in Request No. 11 on the grounds that it is impermissibly vague and not defined. Defendants further object to this Request on the grounds that it is overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Request to the extent it requires the production of documents that are commercially sensitive and, in this regard, Defendants note that Plaintiff has testified in his deposition that he currently is employed as an executive of a company that is a competitor of Defendants.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 11. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

***Document Request No. 12:*** AIGTP documents reflecting or concerning end of year reserves and/or methodology for determining those reserves, including liquidity, credit and/or discretionary, for 2000, 2001, 2002 and 2003.

***Response # 12:*** In addition to the General Objections, Defendants object to the use of the term "reserves" in Request No. 12 on the grounds that it is impermissibly vague and not defined. Defendants further object to this Request on the grounds that it is overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Request to the extent it requires the production of documents that are commercially sensitive and, in this regard, Defendants note that Plaintiff has testified in his deposition that he currently is employed as an executive of a company that is a competitor of Defendants.

Subject to, as limited by and without waiving the General Objections and the foregoing specific objections, Defendants will produce, at a mutually convenient time and place, non-privileged documents pertaining to the methodology for determining Plaintiff's "liquidity, credit and/or discretionary" reserves, if any, for the Western Areas transaction in 2002 and 2003, to the extent that they exist and can be located after a reasonable search.

***Document Request No. 26:*** All documents reflecting or concerning John Finigan's allocation of reserves in 2002 and 2003, by month, quarter and year end, including but not limited to any emails on this topic authored by or copied to Brad Klein, Rick Neurendorf, Brian Morrisey, Rob Feilbogen, Chuck Lucas, Richard Dryzinski and John Finigan.

***Response # 26:*** In addition to the General Objections, Defendants object to the use of the term "reserves" in Request No. 26 on the grounds that it is impermissibly vague and not defined. Defendants further object to this Request on the grounds that it is overly broad and unduly burdensome, and purports to require the production of documents that are neither relevant to the claims or defenses asserted in this action nor reasonably calculated to lead to the discovery of admissible evidence.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 26. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

*Document Request No. 39:* All documents reflecting or concerning movement of money in the Western Area credit reserve account, the liquidity reserve account and/or the discretionary reserve account, in 2002, 2003 and 2004.

*Response # 39:* In addition to the General Objections, Defendants object to Request No. 39 on the grounds that is overly broad and unduly burdensome. Defendants further object to the use of the term "movement of money" in this Request on the ground that it is impermissibly vague. Defendants also object to this Request to the extent it requires the production of documents that are commercially sensitive and, in this regard, Defendants note that Plaintiff has testified in his deposition that he currently is employed as an executive of a company that is a competitor of Defendants.

It is not clear to Defendants what documents are sought by Plaintiff through Request No. 39. Defendants are prepared to discuss the Request with Plaintiff to ascertain whether agreement could be reached on production of documents that are properly discoverable.

(Pl.'s Mem. Supp. Mot., 2/7/05, at 5–9).

### Standard of Review

The scope of permissible discovery is quite broad. *Marchello v. Chase Manhattan Auto Finance Corp.,* 219 F.R.D. 217, 218 (D.Conn. 2004). *See also Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment"). Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth its scope and limitations, providing that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1). "Discovery is normally allowed into any mat-

ter that bears upon the issues or reasonably could lead to relevant information." *Kimbro v. I.C. System, Inc.,* No. 3:01CV1676, 2002 WL 1816820, at *1, 2002 U.S. Dist. LEXIS 14599, at *2 (D.Conn. July 22, 2002). Moreover, in the Second Circuit, "this obviously broad rule is liberally construed." *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991); *Morse/Diesel, Inc. v. Fidelity & Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988).

■ If a party resists or objects to discovery, Rule 37 of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery ...." Fed.R.Civ.P. 37(a). A party may object to a request if it is irrelevant, overly broad, or unduly burdensome. Charles A. Wright, Arthur R. Miller and Richard L. Marcus, 8A Federal Practice & Procedure § 2174, at 297 (2d ed.1994). To prevail on its objection, however, the objecting party must do more than "simply intone [the] familiar litany that the [requests] are burdensome, oppressive or overly broad." *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y.1984). The objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (internal citations and quotation marks omitted). *See also Kimbro,* 2002 WL 1816820 at *1, 2002 U.S. Dis. LEXIS 14599 at *2 (stating that "the objecting party ... bears the burden of showing why discovery should be denied") (citation omitted). Moreover, the court, in deciding discovery issues, is afforded broad discretion. *See Wills v. Amerada Hess Corp.,* 379 F.3d 32, 41 (2d Cir.2004).

Still, even where the discovery sought is not relevant to a claim or defense of party, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed.R.Civ.P.

26(b)(1). As the advisory notes relating to the 2000 amendment state:

When there is an objection to a discovery request on the ground that it goes beyond material relevant to the parties' claims and defenses, the court must determine whether the request, in fact, exceeds the bounds of the claims and defenses and, if so, whether there is, nevertheless, good cause to permit the discovery so long as the material sought is relevant to the subject matter involved in the action.

6 James Wm. Moore et al., Moore's Federal Practice § 26.41[3][a] (3d ed.2004) (citing Fed.R.Civ.P. 26(b)(1) advisory committee's note (2000)). While not a formality, "the moving party's burden for obtaining discovery beyond that directly pertinent to incident in suit should not be too heavy" as "[t]here is no indication that the 2000 amendment to Rule 26's definition of *relevance* for discovery purposes marks a substantial departure from the traditional liberal construction of the term, which is designed to assure access to the information necessary for the achievement of justice and fair trials." *Id.* § 26.41[3][c] (emphasis in original).

The amendment requires courts "to focus on the claims and defenses and defenses the parties have actually asserted[,]" however the "line between information relevant to the claims and defenses the parties have asserted and information relevant to the subject matter of the pending action is neither bright nor distinct." *Id.* § 26.41[6][c] (citing Fed. R.Civ.P. 26(b)(1) advisory committee's note (2000)). Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

### Discussion

■ The court is unpersuaded by the defendants' argument that the plaintiff ignores the governing standard for discovery. (*See* D.'s Mem. Opp. Mot., 2/28/05, at 6). First, their argument presupposes, on the basis of

the plaintiff's citation of *In re Agent Orange Product Liab. Lit.*, 98 F.R.D. 557 (E.D.N.Y. 1983) for the proposition that "[t]he rules of discovery permit the discovery of all nonprivileged information that is relevant to the *subject matter* of the case," that the information is, *in fact*, only relevant to the subject matter and not the claims or defenses of any party. (*See* Pl.'s Mem. Supp. Mot., 2/7/05, at 9 (emphasis added); D.'s Mem. Opp. Mot., 2/28/05, at 7). However, whether the information sought is, in fact, only relevant to the subject matter of the litigation remains a question for the court. *See* James Wm. Moore et al., 6 Moore's Federal Practice § 26.41[3][a] (3d ed. 2-4) (citing Fed.R.Civ.P. 26(b)(1) advisory committee's note (2000)).

Obviously, *In re Agent Orange* was decided well before the 2000 amendment, and as such, the proposition does not necessarily incorporate the post–2000 nuance. Perhaps *In re Agent Orange* was not the best choice of citation,[1] but such reliance does not alter the underlying nature of the request. To quote Shakespeare, "that which we call a rose [b]y any other name would smell as sweet." *See* eNotes, *William Shakespeare available at* http://www.allshakespeare.com/276 (last visited June 6, 2005).

Moreover, the plaintiff makes several references to his belief that the requested information is relevant to his claims, not just the subject matter of the litigation. He states that he served the requests in question "[i]n order to collect documents *relevant to his claims, and the defenses thereto* . . . ." (Pl.'s Mem. Supp. Mot., 2/7/05, at 1) (emphasis added). Specifically, he argues that "[b]ecause the compensation agreement at issue in this case provides plaintiff with a significant stake in the defendants' reserves, the spreadsheets and accounting records sought by plaintiff are *relevant to his claims and the damages arising therefrom.*" (*Id.*) (emphasis added). Indeed, that the defendants' object to the requests on the ground that they are "overly broad" and "unduly burdensome" indicates their concern that the first part of

---

**1.** *But see* 6 James Wm. Moore et al., Moore's Federal Practice § 26.41[6][c] (stating that "[i]t is, thus, likely that the courts will continue to construe discovery rules quite liberally, with a predisposition toward allowing discovery, and that the court opinions rendered before the adoption of the 2000 amendments will continue to have great force").

Rule 26(b)(1) applies. (*See id.* at 5–9). That the plaintiff responds to these objections indicates his support of the same. (*See id.* at 10).

The defendant rightly asserts that the 2000 amendment implies that "the fact must be germane to a claim or defense alleged in the pleading for information concerning it to be a proper subject of discovery." (D.'s Mem. Opp. Mot., 2/28/05, at 7 (citing *In re PE Corp. Sec. Lit.,* 221 F.R.D. 20, 24 (D.Conn.2003)(internal quotations omitted))). But that begs the question, are the facts requested germane to a claim or defense alleged in the pleading? For the reasons set forth in the plaintiff's brief, the court finds that they are.

Paragraph 3 of the alleged contract states that if the plaintiff is terminated, he will continue to receive a salary and bonus, calculated in part, using "any outstanding reserves held against past and current Commodity Business transactions at the time of termination, provided that AIG [AIGTG] may pay the bonus associated with reserves only when those reserves are realized in accordance with AIG's [AIGTG's] normal policies." (Pl.'s Mem. Supp. Mot., 2/7/05, at 3). The court agrees that "[t]he discovery of this information is necessary if plaintiff is going to accurately calculate the damages arising from the breach of contract and other claims." (*See id.* at 11). The court also agrees that "[t]he spreadsheets and accounting records sought are also relevant to the issue of defendants' 'normal' treatment of reserves." (*See id.* at 12). The term "normal" does not exist in a vacuum. That which is normal conforms to a certain standard—which begs the question: "What standard?" The plaintiff's request, in this regard, is relevant to answering this question.

In reality, the defendants themselves ignore the governing standard for discovery. They wrongly assume that the requests relate only to the subject matter of the litigation (a thin reed upon which to base their entire argument), and, based on that assumption, contend that the plaintiff bears the burden of showing that good cause exists for the production of responsive materials. (*See* Ds.' Mem. Opp. Mot., 2/28/05, at 7). As

such, they focus their brief on the contention that the plaintiff "has not shown good cause for further discovery." (*See id.* at 8–14). In so doing, however, they shirk their initial burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive ...." *See Compagnie Francaise d'Assurance Pour le Commerce Exterieur,* 105 F.R.D. at 42 (internal citations and quotation marks omitted).

■ The court finds that the defendants have not satisfied their burden. In their objections, they do no more than simply "intone [the] familiar litany that the [requests] are burdensome, oppressive or overly broad." *See id.* On the contrary, the court finds that the requests are not overly broad nor unduly burdensome. The plaintiff suggests, and the defendants do not contend otherwise, that there will "likely be minimal burden in producing these financial records" as the documents requested are easily retrievable. (*See* Pl.'s Mem. Supp. Mot., 2/7/05, at 15). Moreover, the temporal scope of the requests is not overly broad—it is reasonably within the relevant time period. Furthermore, "a confidentiality stipulation affords the defendants adequate protection regarding the 'commercial sensitivity' of the documents sought." (*Id.*). In addition, the plaintiffs are open to "reasonable additional measures to secure the confidentially of the documents sought" should the defendants care to propose them. (*Id.*). That ample discovery has been produced on the plaintiff's bonus claim is of no import. (*See* Ds.' Mem. Opp. Mot., 2/28/05, at 8). Further, that extensive reserve data has been produced does not mean that the production of more is not required. (*See id.* at 9). The court finds that the discovery sought is not "unreasonably cumulative or duplicative ...." (*See* Fed.R.Civ.P. 26(b)(2)).

Based on the foregoing, the plaintiff's motion to compel (Dkt.# 37) is **GRANTED**. As such, the defendants are hereby **ORDERED** to produce the requested materials forthwith. At the conclusion of all proceedings, on application, the court will consider the amount of

attorney's fees, if any, that should be awarded in connection with this motion. *See* Fed. R.Civ.P. 37(a).

**IT IS SO ORDERED.**